No. 22,473.

CHARLES BINGER AND MARY BINGER, *Appellants*, V. THE GAS BELT FUEL COMPANY, *Appellee*.

CHARLES BINGER AND MARY BINGER, *Appellants*, V. A. N. CURTIS *et al.*, *Appellees*.

CHARLES BINGER AND MARY BINGER, *Appellants*, V. THE COMMONWEALTH OIL COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

OIL AND GAS LEASE—*Liability of Lessees for Annual Rentals.* A supplementary agreement touching a gas and oil lease examined, and held that by its terms the lessees were bound to pay an annual rental while they kept the lease alive after development and production ceased to be profitable.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed February 7, 1920. Reversed.

*G. A. Amos*, and *L. T. Cannon*, both of Humboldt, for the appellants.

*John J. Jones, James A. Allen, Hugh P. Farrelly* and *T. R. Evans*, all of Chanute, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action is for rents on a gas and oil lease. It was commenced by Binger and wife against all the above defendants as successive assignees of the original lessee, but to meet an objection of misjoinder three separate petitions were filed by the plaintiffs. The one against the Gas Belt Fuel Company, which is typical of them all, alleged that Binger and wife owned a farm in Allen county, upon which they granted to one Detwiler an oil and gas lease on June 27, 1906. The lease, subject to conditions, was to run ten years and as much longer as oil or gas should be produced on the premises. The lease provided for royalties to the lessors and gas for their household service. It also provided—

"In case lessee fails to drill two wells for oil or gas within twelve months, from this date, and two more within the next twelve months on

said land, or to furnish gas for stoves and lights for dwelling on said land as aforesaid within 3 months from this date, then this lease to be null and void."

By mesne assignments the Gas Belt Fuel Company became the lessee, and on June 1, 1908, the lease was modified by a supplemental agreement which changed the gas royalty to read—

"If the second party shall sell or market gas from any well on said premises he shall pay the first parties therefor at the annual rate of $200 for each well during the time such gas shall be sold or marketed."

The requirements for development and for household gas service were also changed thus:

"In case lessee fails to drill two wells for oil or gas within twelve months from this date and two more within the next year by June 17th, 1909, on said land, or to furnish gas for stoves and lights for dwelling on said land as aforesaid within three months from this date, then this lease shall be null and void."

On February 8, 1910, the parties to the lease made a further supplementary agreement and modification:

"Whereas, There has been under the terms and conditions of said lease, drilled on the premises in said lease described, two dry holes, two oil wells and one gas well, and,

"Whereas, The said gas well has become, and now is, exhausted, and it is no longer profitable to maintain and operate said well, and,

.    .    .    .    .    .    .    .    .    .

"If the second party shall sell or market gas from any well on said premises he shall pay the first parties therefor at the annual rate of $200 for each well during the time such gas shall be sold or marketed, said payments to be made on each well within 30 days after the same is drilled in, and annually thereafter; provided, however, that the said second party shall have the right to continue this lease in force by paying an annual rental of $100 per year and by furnishing the said first parties with gas for domestic use on the premises described in said lease so long as the said second party shall use gas from the Heitinger lease, and no other nor further rentals shall be necessary to preserve said lease."

On February 10, 1910, the Gas Belt Fuel Company paid to the plaintiff, Charles Binger, the sum of $100, which Binger receipted for as "Rental and Royalty for the year ending February 11, 1911, as per terms of Supplementary Agreement, dated February 8, 1910."

No other or further payments being made by the defendants or any of them, plaintiffs in this consolidated action demand

from defendants the sum of $100 per annum and annual interest from February 8, 1911, until the time of the cancellation of the lease, January 7, 1916.

Defendant's separate answers denied liability and full compliance by each of them in turn as successive lessees.

The cause was tried by the court without a jury. The case turned largely upon the written terms of the supplementary agreement of February 8, 1910, but some facts were developed. About the time the last supplementary agreement was made, the Gas Belt Fuel Company paid the lessors $100, which they receipted for thus:

"CHANUTE, KANSAS, Feb. 10, 1910.

"Received of The Gas Belt Fuel Co.

"One Hundred Dollars ($100.00) as Rental and Royalty in full on Lots 9 and 10 and East ½ of S. W. ¼ Sec. 30, Twp. 26, Range 19, Allen County, Kansas, for the year ending Feb. 11, 1911, as per terms of Supplemental Agreement dated Feb. 8, 1910.

"(Signed)      CHAS. BINGER."

Judgment was rendered against the plaintiffs, and they appeal. There is an apparent agreement between counsel for plaintiffs and defendants that the correctness of the judgment depends upon the proper meaning of the clause in the supplementary agreement of 1910, which provided that the lessees should have a right to continue the lease in force by paying an annual rental of $100 *and* by furnishing gas to the lessors for domestic use.

In the early years of the lease, the furnishing of gas for domestic use was an alternative condition. As stipulated in 1906 and again in 1908, the lessees were to do certain drilling, etc., *or* to furnish gas for domestic use to the lessors. But the supplementary contract, after recognizing the conditions disclosed by drilling on the property and the unprofitable operation of the gas well on the property, provided for a payment of $200 per annum for each gas well out of which gas *might* thereafter be sold or marketed; and then, in apparent recognition of the lessors' right to terminate the contract if development and production ceased, it was agreed that the lessees were entitled to keep the lease alive upon two conditions—

"By paying an annual rental of $100 per year and by furnishing the said first parties with gas for domestic use," etc.

These conditions seem plain to this court. The Gas Belt Fuel Company, which was the lessee at the time this agreement was made, seems to have understood, at that time, that it was bound to pay $100 annual rental. It paid it while the terms of that agreement were freshly in mind.

This is not a case where we must defer to the opinion and judgment of the trial court on conflicting evidence. The written contract is before us, and we may not escape our own responsibility to adjudicate its terms; and we are constrained to hold that plaintiffs were entitled to judgment for the agreed annual rental of $100 per annum with simple interest thereon from the time each annual payment became due.

There is a suggestion in appellees' brief that the clause which gave the lessees the right to keep the lease alive by paying the annual rental of $100 and by furnishing gas for domestic use was an option. Probably so. But it was an option which the lessees chose to exercise, and pursuant to its terms they kept the lease alive until it suited their purposes to terminate it in January, 1916. Consequently, they ought to pay.

The judgment is reversed, and the cause is remanded with instructions to enter judgment for plaintiff as indicated herein.